Davis, J.
These cases have in common one point, which is decisive of each case. In one of the cases the policy provides that if a building1 therein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days, the entire policy shall be void, unless otherwise provided by agreement indorsed thereon or added thereto. At the time of the fire and for more than ten days previous thereto, the premises were wholly unoccupied without the knowledge of the insurer. In the other case the policy provides that if the premises described therein shall become vacant, unoccupied or uninhabited without written' consent *552 thereon; the policy shall be null and void. The building described in the policy was not occupied when the fire occurred nor for a considerable time before. Both cases are therefore controlled by Farmers’ Ins. Co. v. Wells, 42 Ohio St., 519, unless a change of occupancy amounting, to a vacancy is within the words, “any change increasing the risk,” occurring in Section 3643, Revised Statutes.
So much of the section as is material to the present purpose is as follows: “Any person * * * hereafter insuring any building or structure ■against loss or damage by fire or lightning, * * * shall cause such building or structure to be examined by an agent of the insurer, and a full description thereof to be made and the' insurable value thereof to be fixed by such agent; in the absence of any change increasing the risk without consent of the insurers, and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned- in the policy * * * shall be paid, and in case of a partial loss the full amount of the partial loss shall be paid * * *.”
This enactment was passed March 5, 1879 (76 O. L., 26), and the policy which was sued on in Insurance Co. v. Wells, supra, was issued a year and a half after the passage of this act and was clearly governed thereby, if the statute covers such a case. It is not discoverable, however, that any reference was made to the statute by counsel or court, at any stage of the case, through several years of litigation. Inasmuch as the able counsel and the judges of the several courts must be presumed to.have known of the existence of the statute, the inference is very strong that it was con *553 ceded all around that the statute did- not apply to the facts of that case. Yet, since the reason for the silence of this court upon that point can only be conjectural, the question here still remains with us. The ruling in Insurance Co. v. Wells, however, stands unquestioned and unqualified, except inferentially in cases hereinafter commented upon..
Proceeding now to a construction of the statute it will be noticed that it first, distinctly and without any ambiguity whatever, provides what may be required by “any person hereafter insuring any building or structure.” Pie “shall cause such building or structure to be examined by an agent of the insurer.” It is not required that the examination shall extend to the uses, purposes and surroundings of the “building or structure,” nor to ownership, incumbrances, possession of exposures of the “building or structure;” for if we may go outside of the explicit language of the .statute for one thing, we may for all. The information to be acquired by such an indefinite and extended examination may be valuable, and even necessary, in some aspects of the contract of insurance; but the purpose of the statute is satisfied when the examination is limited to the thing to be insured, that is, the “building or structure,” and when the insurer’s agent has made a full description.and fixed the insurable value “thereof,” that is, of the “building or structure.” Now we come to the latent ambiguity of the statute, an ambiguity which disappears entirely if we keep in mind the sole purpose of the statute, to fix a value on the. insured “building or structure” which should be unquestionable in case of a total loss and without regard to any other controversies which might *554 arise between the parties to the contract. “In the absence of any change increasing the risk -vyithout consent of the insurers, * * * in case of total loss, the whole amount mentioned, in, the policy * * * shall be paid,” says the statute. Any change in what? Manifestly, in the “building or structure” which is insured and valued, because only that is the subject-matter of the- statute and of the whole sentence in which the phrase “any change” occurs. “All words of a general nature not express and precise are to be restrained unto the fitness of the Subject-matter or the person.” Steamboat Messenger v. Pressler, 13 Ohio St., 255, 262.
Considerations similar to these have led this court to hold that a stipulation in a policy that it shall become void by the taking of additional insurance without the consent of the insurer, and a stipulation that a policy shall become void if any part of the- property insured shall be incumbered by mortgage without the consent of the company, are not within the provisions of Section 3643, Revised Statutes. The Sun Fire Office of London v. Clark et al., 53 Ohio St., 414; Webster et al. v. Dwelling House Ins. Co., 53 Ohio St., 558. The ground of these judgments was admirably stated by Minshall, J., in the first case cited here, as follows : “This examination relates only to the physical condition of the property, and, therefore, by the ordinary rules of construction the general language immediately following should be limited to a change in such things as come within the purpose of the examination. So interpreted, they can mean no more than that, in the absence of any change in the physical condition of the property *555 increasing the risk the full amount of the insurance shall be paid in case of a total loss. If it had been intended to enlarge the meaning so as to embrace other matters made material by the terms of the policy, more apt words could and, as we think, would have been used. The language woúld have been so introduced as not to be naturally restrained by the context to a more limited meaning.” But it was also said in that case that: “A careful reading of the statute will disclose, as we think, a simple purpose on the part of the legislature to limit it to such matters connected with the physical condition of the property — its value, structure and surroundings, as might.have been discovered in the examination required to be made;” and in the other case it was said by the judge who delivered the opinion of the court that “the change referred to in the statute relates to some physical change in the insured building, its use or its surroundings” etc. See p. 568. Now, as we have already said, we see no warrant in the statute for extending its terms over anything else than the “building or structure” which is the subject of'the insurance; and we think that we have demonstrated that the statute was not intended to include or apply to anything distinct from, or accidentally related to, the corpus of thé insured building. We, therefore, think it unfortunate that these able judges did not speak on this subject with their usual close discrimination;’ otherwise we might not have been called upon to review the subject now. Those cases, however, ended in proper judgments, as we think it must be conceded; and. if covenants such as those are not annulled by the statutes, where shall the *556 line be drawn? It was.argued in the above' quotation from The Sun Fire Office of London v. Clark, supra, and in an opinion by Laubie, J., in 7 C. C., 511, 519, et seq, to which special reference is made in Webster v. Dwelling House Ins. Co., supra, that if it had been intended to enlarge the meaning of the precise words of the statute so as to embrace other matters made material by the agreement of the parties, it would have been more natural to have said so definitely and directly. That' seems to be sound reasoning, and if true, then the conclusion would seem to follow that the legislature meant what it said, and no more; and it would also seem to follow, conversely, that if the courts may stretch the words, from their obvious meaning of any change in the building or structure, to any change in the occupation of the building, then there is no limit to such judicial legislation as would eliminate every condition of the policy relating to title, possession, incumbrance, over-insurance, use, occupation, and the like. We can not think that the legislature ever intended, to be so interpretéd.
The courts below in both cases now before this court followed the case of Moody v. Insurance Co., 52 Ohio St., 12. The reasoning in support of the final judgment in that case is peculiar and, it seems to us, unsatisfactory. On the point now under consideration, the opinion occupies less than a page and is, in substance, as follows: “The statute being in force when the policy was issued, became a part of the contract of insurance, and controls its construction and operation.” It is undoubtedly true that the statute controls according to its intent and meaning. , “The condition of the *557 policy in regard to the occupancy is therefore so qualified by the statute, that, in the absence of intentional fraud on the part of the insured, to make the change from occupancy, to disuse or want of occupancy available as a defense, it must appear that the risk was increased.” With all respect, we are unable to see that the conclusion follows the premises. Insurance Co. v. Leslie, 47 Ohio St., 409, is cited to support the conclusion and we will examine it presently. The opinion continues: “It is well settled that the risk is not necessarily, or prima facie increased, by the insured property becoming vacant or unoccupied (citing authorities). And, therefore, when the insurer pleads such change as a defense to an action on the policy, the answer must allege that the risk was increased on account of it, unless the insured was guilty of fraud.” That is the whole reasoning-, upon this point; and the last “therefore” might be accepted as valid, if it had been first shown that ‘such change” was within the meaning of the statute.
We now take up Insurance Co. v. Leslie, 47 Ohio St., 409, which seems to have been relied upon as the chief corner-stone of Moody v. Insurance Co. Since no reason was given for the ruling in Moody v. Insurance Co, except a reference to this case we have looked through .it carefully for some attempt to show that the words of the statute, “any change” mean any change whatever, in the broadest sense, instead of any change in the building or structure; but we have looked in vain.. The construction is dogmatically announced,” p. 415, without any attempt at elucidation. After a-statement of the substance -of the statute, the- fot-. *558 lowing unsupported declaration is made: “If, after the policy is issued there be any change in the condition or surroundings of the property which increases the risk, without the consent of the insurer, or, if there be intentional fraud on the part of the insured, these are regarded by the statute as matters of substance and may defeat a recovery on-the policy.” This is substantially all of the opinion in the Leslie case on this point; and the syllabus is no clearer than the statute, for it is in the same language as the statute. It reads as follows: “The more effectually to- accomplish these results, the statute holds the company liable on its policy, unless, after its issue, a change occurs increasing the risk ’’ etc. Against this we must place the same query which arises upon a reading,of the words of the statute. A change in what?
We have; been referred also to The Milwaukee Mechanics’ Ins. Co. v. Russell, 65 Ohio St., 230. That case was decided on the points stated in the syllabus, all the judges concurring; but it must be apparent from the report that at least half of the members of the court did not concur in all-that was said in the opinion by Williams, J.
The citation of cases which have been decided upon the authority of Moody v. Insurance Co., is beside the question. The question clearly presented here is, whether, in view of Section 3643, Revised Statutes, Insurance Co. v. Wells, 42 Ohio St., 519, controls these cases, or whether they must be decided according to Moody v. Insurance Co., 52 Ohio St., 12. Our- conclusion is, for the reasons stated, that the law as stated in Insurance Co. v. Wells has not been qualified by the statute, *559 and that Moody v. Insurance Co. must be overruled.

The judgments below are reversed and judgment for the plaintiffs in error.

Si-iauck, C. J., Price, Crew and Summers, JJ., concur. Spear, J., dissents.